Good morning. May it please the Court, my name is Shannon Seibert. I represent the Plaintiffs and Appellants Benjamin Oyarzo and Nicholas Hart. We have a number of consolidated cases at issue this morning. I would like to reserve two minutes for reply, if that's okay. And to try to narrow the issues, I would like to focus on three broad areas. The first applies directly to Mr. Hart, and that is the reduction of the jury award to approximately $290,000 down to $1. The second is the granting of summary judgment in favor of Tuolumne Fire District and against Benjamin Oyarzo with regard to the termination as punitive action under the Firefighter Bill of Rights. And the third applies to both Plaintiffs and Appellants, and that is the granting of summary judgment with regard to the California Labor Code Section 1102.5 claim. Beginning with the district court's vacation of the jury verdict, not the actual verdict, but the damages portion of the verdict, the district court, following a motion to amend the judgment from Kenneth Hockett, granted Kenneth Hockett's motion after finding, as a matter of law, that there was insufficient evidence to support a jury award in the amount — a jury award of compensatory damages in the amount of $290,000, 767. In doing so, the district court applied a Rule 50 analysis. Federal Rules of Civil Procedure Rule 50 allows a court to make a legal determination of insufficient finding of insufficiency of the evidence through a renewed judgment as a matter of law when a judgment as a matter of law is brought prior to the close of trial by the moving party. That didn't happen here? That did not happen here. Nicholas Hart, we then, on behalf of Nicholas Hart, brought another motion to renew the judgment after the judgment had been amended once, to amend the judgment, excuse me. And the Court said, no, we ruled under Rule 59. It wasn't under Rule 50. The problem is that the language from the — from — and this is the excerpt of Record 45, and this is the February 24, 2014, initial order amending the judgment. The analysis is Rule 50 analysis. It is finding, again, legal insufficiency of evidence. Put aside the procedural problems of how you got there. As I read this record, the judge said you can't get post-termination damages, instructed the jury that there are no such thing as post-termination damages here given — and then determined that all the evidence — and there's a — as I see it, there's a concession by counsel. I'm looking at pages 68 and 69 of the excerpt of Record. Counsel says, well, we haven't proven any pre-termination economic damages. We've proved — we think we've put in evidence of pre-termination non-economic damages, but the jury doesn't come back with any pre-termination non-economic damages. It leaves that — leaves it blank, right? Well, actually, that's interesting because on the verdict form, they were given the option of economic and non-economic damages.  They weren't given the option to break it up. I know, but as to non-economic, it's blank. Correct. Okay. So whether they're pre or post, it really doesn't matter because they don't find any. Correct. And given the concession that there was no proof of any pre-termination economic damages, why wasn't the judge correct in saying that under the instructions I gave the jury, there was simply no proof of any cognizable damage at all? Well, there are two answers to that, and they veer off a little bit. So I'll start with one. The first one is that that goes to the initial determination at the 12b-6 stage of a finding of absolute immunity with no request from the defendant. Sure. But let's assume — you know, again, let's assume for purposes of discussion now. If we — obviously, if we overturn that, then every other — other stuff is going back and we're not worrying about the award being overturned. So my question is, given that set of reasoning, if the judge was right in thinking there could be no post-termination economic damages, and if counsel's concession, which is we didn't put on any evidence of any pre-termination economic damages, is credited, and I think it has to be, and if the jury is leaving blank the non-economic damages line is also a fact that we take, given that construct, wasn't the judge correct in saying, I'm sorry, there's no evidence to support the jury's damages award? Even if that is accepted as true, the judge, the district court, is still evaluating the evidence. He is substituting his opinion for that of the jury. But that's what I'm asking. Isn't he saying no? There is no legally — there is no — as a matter of law, the only evidence that was submitted of economic damage is related to damages suffered post-termination. And that, as a matter of law, is not evidence of damage because of my ruling on absolute immunity. Well, I'm going to step back, because it wasn't completely conceded that no evidence of pre-termination damage occurred. The discussion was the articles in the disciplinary notes in his personnel file, and that that was done pre-termination. Right. But wasn't — didn't counsel say those gave — as I read the record, I'm looking at pages 68 and 69 of the record, counsel says, but those are — after a long colloquy, counsel says, but those go to non-economic damages. Those don't go to economic damages. You're right, Judge. We didn't put on any evidence that those led to economic damages, because he remained employed during that time period. And the question was, from the three acts that were found by the jury to have been  didn't counsel say they were non — any damages that flowed from that were non-economic? Isn't that exactly what counsel said on pages 68 and 69 of the record? I don't recall. I don't believe so, Your Honor. Sorry. I do recall. I don't believe so. And the reason is that because our argument to the district court was that the presence of those disciplinary documents in his file with Hockett's testimony, that he never took those disciplinary documents out of his file, our client, three years later, had still been unable to obtain a position as a firefighter. A reasonable jury could conclude that based on the fact those disciplinary documents through the date of trial in December 2013 were still in his file as a firefighter with background checks, that that would prevent him from being rehired in the fire industry, which he testified at trial to being — still trying to get back into the fire industry. So it wasn't that it was non-economic damages, emotional distress that flowed from the pre-determination actions. It's that the — the — it was — You get the separate problem of the numbers being exactly the same as the expert's testimony post. Right. But put that aside. Continue. Okay. But, again, it comes back to the district court had to — even if he says there's no evidence, it is still evaluating the evidence. It's an inescapable fact. We were kind of almost boring up on doublespeak to say, well, as a matter of law, there's no evidence. To find no evidence, you have to look at the evidence. You say that's just — that's all you need is to show that because he had to look at that and looking at the fact that there was no evidence. But he would have been able to do that if there had been a Rule 50 motion. Had they brought a Rule 50 motion prior to the close of trial, absolutely he could have done so to his bounty, 100 percent. He had the authority to do so. But you're saying afterwards that that changed despite the fact that the jury seems to have awarded an amount that was exactly the amount that the expert testified to that was for post-termination. Correct. And that you — the lawyer on behalf of Hart had conceded that there would be no — not able to get post-termination in light of the absolute immunity. We argued like crazy on that, but yes, in light of the absolute immunity. Okay. Correct. So I was just trying to — so was the verdict form right to allow them to — did anybody object to the verdict form? No, we did not object when it was — Did the defendants? I apologize. We did object to the form prior to giving it to the jury. Plaintiffs, my partner and I, had requested that the jury be provided three options for damages, and that was past wage loss, future wage loss, and emotional distress. Our objection was overruled, and defendants' proposed jury instructions were provided, which was economic and non-economic damages. Did the jury instructions define economic and non-economic? They absolutely did not, Your Honor. Now, I noticed in the jury verdict that it was — when it says non-economic damages, it's just blank. Correct. And when it was read in court, we were called back in quickly. We did not have the form in front of us. They did not read non-economic damages blank. They just skipped over it when reading the verdict. And therefore, that is why we did not object at the time it was read or ask for the jury to be pulled or to be brought back to determine the answer to that question. You know, pretty much said all — when the — was this a magistrate judge that conducted the trial or a district judge? It was a magistrate. When the judge, whoever it was, set aside the verdict and the $290,000 and awarded the $1 in nominal damages, what was the authority for the $1? Is that — are nominal damages always just $1? No. And, in fact, nominal damages can only be awarded when there's a finding of liability, but the jury does not find any harm. Here, the jury clearly found harm. They may have — conceitedly, they may have based it on an improper theory, given the Court's rulings on absolute immunity. But even in — even in such a case, for example, the Ninth Circuit and Enry First Alliance, where it was clearly identifiable, and this is — I believe it's discussed a bit in the — in the brief, the out-of-pocket — out-of-pocket damages versus benefit-of-the-bargain damages, even when it was clearly identifiable what they had done, what the jury had done, they had implied a theory of damages that they had been instructed not to, it was remanded for — it was remanded back to the district court for further proceedings. The district court didn't substitute its findings for that of the jury, and the appellate court also did not, because to do so would be a violation of the Seventh Amendment. Kagan. So was it the magistrate that did this, or the district court? I guess I'm a little confused on who ruled that there was no jury trial and that just awarded $1 in nominal damages. That was the magistrate. The district court, the Article III judge, ruled on the 12b-6 and the summary judgment motion. We then stipulated to the magistrate. They consented to the magistrate. Exactly. And the case went to the magistrate judge. Exactly. Let me go back. I want to read from page 69, and I don't want to read all the lead into it because I don't want to use a bunch of your time. But the Court is plainly saying, no, no, I want to know what economic damages occurred before the vote. Okay. And you say, Ms. Seibert, if the jury understood economic loss to be actual money to be set aside from pain and suffering and emotional distress, then the answer would be nothing, Your Honor. Why isn't that a concession that you're not seeking economic damages for pre-termination conduct? No, because the pre-termination conduct that the jury rationally could have found to have caused future harm would be those disciplinary letters being left in Mr. Hart's file. I understand that, in theory, a jury could say, yes, there was, there were things left in the file and they caused him harm after the termination. I don't think there's any evidence that they caused him monetary harm before the termination because he remained employed at the same salary, right? Correct. Yes. So the harm would have to occur after the termination. I understand that. But why isn't this a concession that you weren't seeking that? It was not a concession. It said, other than pain and suffering, there is nothing, Your Honor. No, he – that was not a concession that we were not seeking that. He said specifically, if I recall that conversation, he said he was not placed on an administrative leave. There were no days off. There was no money lost prior to December 10th of 2010 when he was terminated. I only have two and a half minutes left. May we switch? We'll make sure. On the whistleblower counts, apparently the judge, and I don't know if it was district court or magistrate at that point, you all agree now was incorrect to say that there was some sort of administrative remedies that needed to be pursued. Is that correct? That's correct. Yes. So what should we do now? Because it's being suggested that, you know, that at least from what I can see, that we should go ahead and review that the facts are sufficient for us to review and make the determination on the whistleblower and other – I think it's the whistleblower counts. Should we send that back to the judge? I mean, it looks like that happened late in the briefing because you responded in the reply, but you don't seem to say, oh, no, we contest that you should – that we should be the ones to determine that. So I just wanted to get your position. The defendant – respondent did raise a new theory at the appellate court. The focus was on administrative exhaustion as well as no triable issues, disputed issues of material fact at summary judgment. I do not believe – I believe I'm saying this correctly. I do not believe the focus was as much on – the focus in the appellate court is they didn't identify the actual statute that was violated or the section or the subsection. And I don't believe the focus was as heavy on that at the actual summary judgment stage when we were developing the evidence that's currently in the record for summary judgment. But that's – that's a pretty straightforward issue, isn't it? It's either right or wrong. It is. And if they're right, then no reason to remand. If they're wrong, shouldn't we remand? Well, if they're – as a matter of law, if they're wrong, then I would say that we would win because the evidence – Well, see, everybody wants to win here. Fair enough. Fair enough. What is your position? Yeah, I just want to know. What's your – yeah, should we remand or not? Our position is that the defendant's – Respondent's argument that the plaintiff's had to cite to a specific section or subsection of the law is incorrect. There is evidence currently in the record. So you're arguing it now and you want us to decide? Oh. The question is very simple. Should we decide that or should we send it back to the district court to decide it? It would probably make the most sense to send it back to the district court to develop the record. And in my question – Right, but that was really my question. Let's assume that as a matter of law, we say, no, they didn't have to cite a specific part of the statute or that you cited it sufficiently. We'd still be left with the question that was posed in the original summary judgment motion, which is whether or not as a matter of fact you had made a case.  We believe it's sufficient. I know, but we'd have to address that in the first instance even under your theory, wouldn't we? Because they're still pushing that theory. Yes, that is correct. As I said, and I believe I'm correct in stating that they have taken a slightly more of a focus on the argument that, again, the specific statute wasn't cited. And I don't believe the focus was as much there at summary judgment. Is there a distinction between the two whistleblower claims, B and C? Yeah. For both Mr. Hart and Mr. Ayarzo have 1102.5B, which is the reporting of an actual violation. Reasonable belief. Exactly. Reasonable belief of an actual violation. C is refusal to engage in illegal conduct. In B, do they have to identify a statute? No, they do not. It's just a reasonable belief of a violation of law. That is the standard. And C is one where they – it looks like you might have to identify a statute. My understanding is that you do not. Again, it's a reasonable belief. B is what they're talking about. It is reasonable belief. Correct. Absolutely. And C is if somebody – it's the same standard as far as whether the plaintiff in this case reasonably believes he's being asked to engage in a violation of the law and says no. That is equally protected. Okay. But let me cut to your bottom line again. So you're – you're content if we, as everybody agrees, that we have to find that the exhaustion ruling was incorrect to take the other parts of the summary judgment motion and send them back to the district court and say you have to address these in the first instance? I think that to have the record fully developed on the – that new – not new, new, on that approach, yes. We could decide them, but I'm asking, you know, what do you want us to do? No, we would agree to that, Your Honor. To send it back? For remand for development of the record. Well, your position is rule of my favor, but if you don't rule my favor, then go ahead and send it back. By the way, this is supposed to be a measure that's their position, too. But let me ask you another question kind of like that. Because, you know, if we conclude that the district court did err in sua sponte ruling on absolute immunity, what should we do? What's the remedy? Our – our – our argument and what we request and honestly would be happy with, if that matters, is because the absolute immunity ruling, we strongly argue, was incorrect to begin with. On the merits. On the merits. And that did that – well, on the merits and procedurally, but also on the merits. And that did permeate the entire case. However, we somehow got through trial and ended up with a jury verdict. And it then ended up taking away the jury verdict in part, in addition to our Rule 50 v. 59 argument. If it were simply a matter of there were so many errors by the court along the way that the jury verdict – I'm so sorry. Go ahead. Because the court, in vacating that initial jury verdict, acted without legal authority to do so. Under Rule 50, which cannot be done again without the initial – the initial motion being brought prior to the close of trial, that's where the court simply just acted without authority, and that is why we are requesting that the award be reinstated based on that particular violation. You want the award reinstated based on the judge ruling sua sponte on the absolute immunity? No. Where I was going – I was jumping ahead, but back to the Rule 50. But you have two clients. Correct. You have two clients here. Correct. And the award being reinstated only deals with one of the clients. That is correct. Okay. So even – I understand your position is that as to that client, if we get the award reinstated, we don't care about any other error in the trial. We're dropping our other claims. Is that your position as to – as to Mr. Hart? As long as you get the award reinstated, you won't press any other claims of error. With the exception of our attorney fees denial. Okay. I'm going to put that aside. As to your other client, which is with respect to absolute immunity, here's the problem I see, and to help me work through this. The judge probably shouldn't have done this sua sponte. But if it were remanded, the other side could raise it because they surely haven't waived an absolute immunity defense. And so you have to address it anyway. So why shouldn't we address it? I would like to clarify one issue, and then I will answer your question, Your Honor. No, we would not. We do not waive our 1102.5. I'm sorry? We do not. On behalf of Mr. Hart, the 1102.5, you asked if we would waive everything. And no, we do not. No, you want a new trial. You want a new trial. If you want a new trial and you win, we don't have to worry about the verdict, do we? Assuming it's not vacated again. Well, we have to see what verdict you get. You can't have a new trial and keep the verdict, can you? No, of course not. But 1102.5 is a separate claim. I understand. That was a First Amendment claim that we won on. Right. Yeah. But it would be the same damage. I assume they would be the same. No, they are separate. They are separate underlying. Damages? They are separate underlying causes. I understand. But aren't the damages intertwined? If the absolute immunity issue were. Yeah, that's right. Okay. So we're talking. No, absolutely. And this is the way the case has been, by the way. I'm really not trying to. I know. I think it's hard for you. You guys know it. So my question is a separate one. Should we address the absolute immunity ruling on its merits? There was a – I think there's a procedural problem in the way that it occurred. But should – notwithstanding that procedural problem, should we address it on its merits? I think the Court has the – of course has the authority to do so. I think that the record is developed in that sense of under the Kamano factors that substantively. Okay. So given the fact that you think we should address it on its merits, why isn't this a legislative vote that's entitled to absolute immunity? Well, because of the Kamano factors, number one. Of the four factors, the fact that it was a formal vote is the only one that was really met as far as the ad hoc decision-making that is – so to be legislative, to actually enjoy absolute legislative immunity, you have to – the legislator has to be acting in the function of a legislator, which is a very kind of – it's a special relationship. It's a balancing of the public interest versus the – of societal needs or the actual situational needs, but not the administrative type decisions that personnel and employment decisions are. When the Board made this vote, and the – and the record is fairly developed in this, in demonstrating that it was clearly targeted toward Mr. Oyarzo and Mr. Hart, that there were five members of the district, firefighters. Two – the two that engaged in the retaliatory efforts, Mr. Oyarzo was the initial plaintiff. The one that had helped the Board members do this, Mr. Powers, he was – he stayed the same. There was a budget concern, an overall budget concern. That was what the essentially cloak was for it, but it's – Do you say there wasn't really a budget concern? The budget concern doesn't explain the demotion. It does not explain the demotion to Mr. Oyarzo. Well, no. He asked if he could still maintain his title as chief, even though he was going to get paid $12 an hour like everybody else. And then the court said – I mean, the court – the Board said no, because you're getting paid basically, from what I can – what I could tell from the review, because you're getting paid the same as everybody else. He – But he – but he did – they let him retain the captain. No, he had already been demoted from chief to captain in September of 2010. So when December 2010 rolled around, we had Mr. Oyarzo as captain, Powers as chief, and then Mr. Hart as chief. And the Board had two other people underneath them, which were Mr. Hart and then two firefighters who had engaged in retaliatory conduct. What the Board did was promote those – so they terminated Mr. Hart as a firefighter. They promoted two firefighters up to the status of engineer, kept their – kept their salary the same. Mr. Powers, who had sort of started all of this with the Board, he was kept the same at engineer, with a 25 percent reduction in his – it was a $4 an hour cut. But Mr. Oyarzo, who is who they were targeting, was demoted with no explanation in the budget. It simply doesn't make sense. When you say he was demoted, he was put on hourly. No, he was brought from captain at $21 an hour down to engineer at $12 an hour. They cut him $9 an hour. Now, budgetary could be an answer for that, but it does not provide an answer for the demotion. Am I right in thinking that everybody was given the same hourly – everybody who remained was given the same hourly rate? Correct. But again, it doesn't explain the demotion. There's no – there's no correlation to fire service. I mean, it makes sense. But I mean, couldn't a legislative body say, let's just pay all our firefighters the same amount from now on? Again, conceivably, yes, but it does not explain the demotion. So was it – the demotion was not part of the overall restructuring? Well, they stated that it was, but they stated that it was for budgetary purposes. But when they took their action, did that include moving his position down? It did. And again, the budget doesn't explain that. And then three weeks later – But when they made the decision, when they voted, when they voted, was the demotion part of the vote? Yes, it was. It was all – it was – I don't know why that's not been part of a legislative – their legislative determination. Because – so the four factors when – an action applies to a few individuals rather than the public at large, rather than, like, fire policy or safety – public safety. But what you're dealing – what you're dealing with is the – you know, the public's tax liability and whatnot. Again, with the – The cost of running the district. With the budget that is conceivably arguable, but not with the demotion. Let's just assume for argument that we don't accept that. Okay. I'm getting that. Okay. So then if they have absolute immunity, if it's ruled that they have absolute immunity, what happens? I mean, even though the judge was probably improper for doing it before the defendants did, it seems like he was – may not have been incorrect. So if we determine that, what happens? They get absolute immunity. And then if it goes back, what's the – what's your posture of your case then? What do you have left? If the absolute immunity were to be granted, then that means that the board members who were on the board at the time of the vote, which for Mr. Yars would be Darlene Hutchins and for Mr. Hart would be Darlene Hutchins, who was already out of the case, so it would be just Mr. Hockett, would have absolute immunity for that act of voting. But not for other acts. Exactly. Not for other acts. And all damages that flow from, for example, Mr. Hockett in his administrative capacity, putting those disciplinary letters in Mr. Hart's disciplinary file, or personnel file, all the damages that flow from that, they flow from that administrative act of putting the letters in the file, not from the vote itself. But, Kate, I want to ask you a procedural question. I know you're well over time, but I hadn't focused on it until you made it at the beginning. The judge treated the motion directed at the jury verdict as a Rule 50 motion. Correct. And you say that was improper because no Rule 50 motion had been made before. Correct.  And ordered a new trial. Absolutely. But you say there was no Rule 59 motion made. The Rule 59 motion. Yeah, there was. Okay. So because it was a Rule 59 motion, why wasn't the judge correct? Put aside reducing it to a dollar, why wasn't the judge correct in saying there's enough here to conclude that this verdict is against the weight of the evidence because given my immunity rulings, the only proof of damage was post. There wasn't proof of whatever number you got post-termination damage, pre-termination, you know what I'm saying, pre-termination economic damages. There wasn't proof of that amount, and so it was against the weight of the evidence, and so I'm setting it aside. Why isn't that appropriate? That would be fully appropriate. Okay, but then you don't get the verdict. Rule 59 judge? No, but if I'm interested. But if I'm interested, then you get the $1 verdict knocked out. Under Rule 59, it's a remitter. He has the authority to do that and say it's insufficient evidence. No, we're agreeing for purposes of discussion. I'm agreeing he can't reduce it to a dollar, but surely he can throw out the verdict and order a new trial, can't he? Under Rule 59, yes, but that's not what he did. I understand. But you're saying, ha, ha, you said the wrong thing. You gave us a dollar rather than zero, then said it again. So why shouldn't we view this as an order for a new trial? Because I ‑‑ we brought to the court, and this actually is not an ah-ha or ha-ha moment. This has been anything but that for us throughout these years of litigation. Because we brought this back to the court and said, Your Honor, this is what happened. Look at the reasoning here. Here, here. You went back to the court here. Now it's in front of us. Why shouldn't we say what he should have done on this record is grant a new trial because that's what the motion was for, and he would have been correct in doing so, and so we'll treat it as granting a new trial. As a matter of justice, it was incorrect to take this jury verdict away, I believe. Litigants are held to our arguments and our representations that are made, and I don't think it's unfair in order to ensure that justice is done. I don't think it's unfair at all to ‑‑ What if he had reduced the verdict down to, say, 20,000? We would have sought a new trial? You mean under Rule 59 or under Rule 50? He said, We're going to reduce it down. I'm going to reduce the jury. The evidence just doesn't support 290,000. I'm going to reduce it to 20,000, and you can take 20,000 or we can have a new trial. We would have opted for a new trial, Your Honor. But he could have taken it down to 20,000. Again, under Rule 59 with the option of a new trial. But what if he had said without the option? What if he had simply said, The evidence doesn't support this verdict. I can't grant a Rule 50 motion because procedurally nobody brought one before, so I'm granting a new trial. That would have been procedurally okay, wouldn't it? You might argue it wasn't substantively okay, but it wouldn't have been procedurally okay. If he just granted a new trial without ‑‑ Just granted a new trial without a remediator. I don't know the answer to that. I'm sorry. He probably could have granted a new trial just on the question of damages. Yes. And that's what we are doing. Straight out. Isn't that what you're ‑‑ is that what you're arguing for now? In the alternative, yes. We request that the jury verdict be reinstated, again, based on the substantive errors of it being vacated in the first place. In the alternative, yes. We do ask that a jury trial be provided as to all damages, all compensatory damages. Right. In light of the fact that they left one blank and compensatory damages. And then at that point you'll know whether or not there's absolute immunity or not and all the other things that are still pending after. That would be helpful. May I have two more minutes to address the Firefighter Bill of Rights? Why don't you save it for rebuttal? Okay. Absolutely. Okay. Thank you. May it please the Court, my name is Anthony Abbott. I represent the defendants and appellees to Alameda Fire District, Joseph Turner, Darlene Hutchins, and Kenneth Hockett. I would like to take up where we left off with Ms. Seibert with respect to the issue of the new trial. And, Your Honor, you mentioned would it have been appropriate to issue a remitter to $20,000. And my answer to that question is absolutely not because there was no evidence of any permissible post-termination damages against Mr. Hockett. The issue of non-economic damages was fully presented. The jury awarded no ---- Why didn't you file or why didn't you ask for a Rule 50 motion? Your Honor, at the time that those jury verdicts were being prepared, we did not know what argument was going to be made regarding whether there was any pretrial ---- That's no response to a motion to Judge Murgia's question. So, you know, at the end of the plaintiff's case, you can file a motion under Rule 50a. Yes. I mean, Judge, everything they've said doesn't add up to relief in their affirmative case. At the end of the plaintiff's case, right? Yes, Your Honor. You file that, denied, but you preserve your right to renew it. At the end of all evidence. At the end of all the evidence. You never did ---- you never did ---- you never filed a Rule 50a, and that precluded you from filing a Rule 50b. Your Honor, I'm ---- And what you ---- it's not what you knew later when the verdicts were being prepared. It's what you knew when the plaintiff rested. Your Honor, I ---- maybe I should not have led with this. I don't want to play musical chairs with my partner here, but he wrote the portion of the brief regarding the Rule 50 v. Rule 59 dichotomy and set forth the reasons why we believe the judge was correct under either analysis to ---- Let's assume he's wrong.  Let's assume that you're precluded from a Rule 50 motion. Under the plain error doctrine, Your Honor. Let's assume that you're precluded from a Rule 50 motion because you didn't make one. You didn't make it under the rules. You didn't make it. You didn't make one. You didn't make one, so that all that the judge could do, the most the judge could do with the verdict was order a new trial. Well ---- And if that's the case, aren't we restricted to ordering a new trial? I don't believe so, Your Honor, based on the plain error doctrine. I don't understand how the plain error doctrine applies here. Oh, plain error doctrine. Okay. The plain error doctrine, Your Honor, allows the Court to rule under, as I understand it, and again, my understanding is somewhat limited, but as I understand it, the plain error doctrine allows the Court to rule post-trial on a Rule 50 basis if there is plain error, even if there's not been a motion made at the end of the plaintiff's case. It means there's a manifest injustice. Yes. So that's what your response is? Yes. That this would be a manifest injustice. Manifest injustice given the fact that there's no evidence of post-termination wage loss, there can be no post-termination wage loss based on the Court's ruling on absolute immunity. I want to explore that, because your opponent says, look, even assuming absolute immunity, even assuming that I can't claim wage loss from being demoted, if you will, and in the other case being laid off, bad stuff was put in Mr. Hart's file pre-termination and that was one of the reasons that he couldn't find a job post-termination. Why isn't that evidence enough to go to the jury? Because it's not evidence, Your Honor. They have cited to nothing in the record that indicates that this information, that these letters in the file were ever disseminated to any other employer, that any other employment decision was based on any of this material that appeared in the file. And if there had been evidence of that, they'd have cited it in their briefs. Did he testify that he couldn't get a job for a while? He testified that he had difficulty in getting a job. But that does not establish a nexus between something that's in a file. Was there evidence that he applied for a job afterwards? I cannot recall that, Your Honor. I'm assuming he probably did. So what you're saying is their pre-termination actions were not the reason he couldn't find a job because there's no evidence, these pre-termination actions being the discipline, there's no evidence that anybody else learned of the discipline? Exactly, Your Honor. Was the discipline private? It was the discipline was the acts of the discipline were two things. They were placing two letters in his personnel file. Right. One because he didn't go to a funeral and another because he refused to work a certain hour. One because he allowed a volunteer fellow to work who we argue should not have been able to work. Okay. But what are you saying that that entire process of discipline was nonpublic? It certainly was not public, Your Honor. Okay. I'm asking. There was no meeting at which he was admonished. There was no public meeting. This was something that happened between Mr. Hockett and Mr. Hart. And the correspondence went back and forth. There was internal e-mail among the board members. And the result was these letters were placed in his personnel file. There's no evidence those letters ever saw the light of day in the public. Let me. Can I ask you? I wanted to ask you some of the same questions that I asked Ms. Siebert. If we conclude that the district court may have erred in sua sponte ruling on the absolute immunity and Mr. Hart, are you Mr. Hart's? I'm not Mr. Hart's. I'm sorry. Based on what happened here, Mr. Hart, and what's your position? What should we do? Well, my first position is that because. What's the remedy? Well, the remedy is for this Court to rule that because the plaintiffs did not contest that finding of absolute immunity on summary judgment, when it was revisited and brought again in the motions for summary judgment by the defendants, that they waived that right on appeal. But why? Why? The judge made a ruling on absolute immunity. Are they required to contest it in a motion on summary judgment? Tell me what case says that. Well, Your Honor, certainly Mr. Iarzo was. Right. Because the ruling did not apply to him. The two cases were separate at that point. But I still don't understand. The judge makes a ruling. Yes. Now we're up on appeal. Yes. And they attack the ruling. Tell me why in a motion for summary judgment one must attack the judge's ruling. Tell me what procedural rule requires that. Because, Your Honor, we raised the issue in opposite – and we raised the issue both on the Asiardo summary judgment motions and the Hart summary judgment motions that the – that this body would have absolute immunity. I understand. You raised it. And they said, look, we're not going to convince the judge he was wrong. We'll wait for appeal to do that. Tell me why not contesting the judge's ruling again in the summary judgment context waives it. Well, I think – again, I think you have to distinguish between Mr. Hart and Mr. Iarzo. Because the ruling was made in Mr. Hart's case before they were consolidated. The ruling was not made in Mr. Iarzo's case. And we asserted absolute immunity. They asserted it and you won. And now they're up on appeal saying, but you're wrong. Yes. Okay. I don't understand how – I don't understand how that's a waiver. But you agreed that the judge shouldn't have done that. Your Honor, it was getting the cart before the horse, but I think the court had the inherent power to do that. Well, you mean – You didn't raise – you didn't – You didn't – you raised – did you raise a qualified immunity? Yes, we did, Your Honor. Okay. But isn't that different than absolute immunity? Oh, yes, absolutely. Absolutely is different than absolute immunity. Yes. So, I mean – It's an unqualified answer. Yes. The law seems pretty clear. The judge is not supposed to sua sponte protect the defendants and raise a sua sponte absolute immunity. So I'm – I think you probably, if you thought about it, would agree with me on that. So what's the remedy? What's the remedy? The remedy, Your Honor, I believe is because the – I think the record is fully developed on this issue. And the factors that are set forth in the Bogan case are in the record before you. I suppose you have two choices. One is you could say we believe this record is clear enough to make a judgment on one way or the other, or we think this record is not clear enough, not complete enough, and we have to remand for a ruling by the district court on that issue. For you to make a motion. Yes. And then the district court to – Yes, exactly. On that issue. And to me it's whether the panel believes the record is complete enough for you to make a decision. Well, here's part of the difficulty, and I respond to it. The – your opponents thought they were responding to a qualified immunity motion, and they may have put on different evidence or made different arguments than they would have made had they were – than they were responding to an absolute immunity motion, because there are different factors. Yes, Your Honor. And Ms. Seibert outlined some of them today. Is the record fully developed with respect to all those possible factors, or would somebody who knew they were being confronted with an absolute immunity motion perhaps have the ability to put on different evidence? You know, I can't rule that out, Your Honor. I mean, as I sit here today, I don't have the factors, you know, in mind, all of them and how they would apply. So, yeah, I mean, I agree that with the court came out with its ruling in the Hart case that the – But you're saying it shouldn't have been a surprise to Mr. Iarzo because the ruling was already out. Yes. Okay. All right. And now let me ask you the same – we have the same issue with the Court's ruling on the administrative exhaustion. You know, both – it seems like both parties agree that the Court was incorrect to say that. Well, Judge O'Neill has rendered an opinion since where he says he now agrees that – Right. So what do we do now? Well, Your Honor, again, what the Court never did below, because it reached its decision based on the exhaustion of administrative remedies, did not address the issue of do they – are they entitled to summary judgment on the other grounds stated. Right. No, that's my point. And that was a good part of our appeal. And so, again, it seems to me the Court has two choices. It can say no, Mr. Abbott, we're taking this up de novo. And if we had been the district court, we would not have granted your motion for summary judgment for these reasons. Or alternatively, the grounds on the merits that you asserted are meritorious and the motion should have been granted below. And it's going to be – and we're not going to overturn the Court's ruling because it was right for the wrong reason. But I'm asking you, do you think that the record is sufficient? Because you didn't raise it until later in the briefing here on HEAL. Or is this the one? I may be confusing it with the other one. But anyhow, do you think – let me just ask you, do you think the record is sufficient for us to rule? Yes, because I believe the record below was sufficient for the district court to rule. On the motions for summary judgment? On the 1102.5. Right. And ordinarily, the argument for us ruling is it's a matter of law, we might as well get it over with, it's judicial economy. Does that change in a case in which we have – if we determine that some issue must be sent back to the district court anyway, we've got three or four issues kicking around here, does it make sense for us to rule on part and the district court then to rule on part and then for it to come back up again? Or doesn't it make sense to send the whole ball of wax, if you will, back to the district court and say, here are the issues, now that you have to address them and we'll have a clean appeal? I can certainly see the point in your argument, Your Honor. I mean, the other side of it would be why not send back to the district court the narrowest possible set of issues for retrial, for reconsideration? If you think – I mean, I just want to ask you then about the tension between this Mize-Kersman and the Hager case, the two California court of appeals cases, regarding the extent that someone can be a whistleblower if the information was already known by the recipient. What's your – because it seems like this is not a very well-settled area of law, of California law. Well, there's this distinction between – I think it's something that's to some degree fact-driven, because it's a question of what the information is. For example, if Mr. Ayarzo, he claims that he reported safety-related violations that were committed by the fireman, if he had come to the board and said, you know, Joe drove a fireman through a red – a fire truck through a red light today and got a ticket, that's a safety-related violation, but it's not whistleblowing. And to me, it's – the issue is more is this – not is – whether it's reporting something that's already known or something that is new information. In the context of this case, I think it's – is the – are the safety violations that were reported the kind of safety violations that can be whistleblowing? And if the board member had come down and looked at the fire trucks and said, oh, my goodness, the slack adjusters are out of adjustment, and had gone back to the board and said, this chief isn't taking care of business, let's fire him, they could have done that. I don't think the analysis changes when Mr. Ayarzo goes up and says, I found the slack adjusters were out of adjustment and the firemen have been admonished. That's not whistleblowing. But doesn't – doesn't Hager plainly suggest that the protections, you know, apply even if the – or the – it's already known, the information has already been known? Yes, Your Honor. I – that's what that case implies. But, again, I – and I don't want to sidestep the Court's question, and I – I can certainly see situations where safety violations being reported that were, say, embarrassing to the company and that were calculated to – to cause retaliation would be even if the board already knew about it. They were conscious of guilt and they were mad. You know, that – that kind of thing, yes, I agree with the Hager analysis there. But what I – what I'm trying to focus on is under the facts of this case, the information that Mr. Ayarzo reported to the board was not whistleblowing. And the information that Mr. Hart reported to Mr. Hockett was not whistleblowing because they can't – there has to be some basis in law, some – Mr. Ayarzo. We would have to say – we would have to say as a matter of law it's not whistleblowing. Yes. Taking all the facts. On the facts of this case. As a matter of law, what was – what was disclosed to the board in one instance and Mr. Hockett in the other, not whistleblowing. Not protected. Not protected because there's no – there's no basis in law. There's no – for example, working one shift alone. There's no law against that. Isn't there a difference between 1102B and C? Yes, there is, Your Honor. C, B says you only need to have a reasonable belief. Yes, but – So the question is, isn't that a question of fact, whether or not he had a reasonable belief? It's a question of fact unless the facts taken most favorably to Mr. Hart and Mr. Ayarzo don't spell out whistleblowing. And with – He doesn't have to show that there's an actual violation. There has to – Your Honor, there has to be – He just has to convince a trier of fact that he has a reasonable belief grounded in something. That's right. And what I'm trying to get at, Your Honor, is on the record we have, they have never been able to articulate what their reasonable belief's based on. Okay. And C, subdivision C is the refusal to participate in a sort of retaliatory – And that is a – that's a new theory, Your Honor. If you take a look at the complaint and track the language of the complaint and track the language of 1102.5B, it's clearly an 1102.5B allegation. There's no similar language in the complaint or anywhere in discovery that says we believe that we are retaliated against because we refuse to participate in illegal activity. And the district judge says that's a new theory, I'm not going to consider it. Yes. That he's right. Yeah. So in your view, this is only a case about B? Yes. I think that the case for C, this is something first brought up in opposition to summary judgment, was this, the C issue. And the B issue, it's a question, again, on the summary judgment analysis, which is where this was decided. It would be a question of whether if we take everything Mr. Hart has to say, everything Mr. Yarza has to say, is there a case? I thought his response was that he had been a firefighter with the U.S. Department of Forest, the Forest Department, and that they had certain practices. And based on that, he thought that what was happening in his department, and that that was his belief, that it was wrong. That's right. But they're his acts. The buck stops with him, Your Honor. Well, you know, it's a question of fact whether or not the trial fact believes him that it was reasonable. He's reporting his own deficiencies, Your Honor. That cannot be. If I run to my boss and say I just committed a safety violation, I'm not protected. Okay. Your Honor, I do have one thing to say about the FPBOR claim. That's the Firefighters Procedural Bill of Rights. Exactly, Your Honor. And that is that looking at the reply brief, that if the Court does find, elect to find, address the question of absolute immunity and find that the board members were absolutely immune for their vote, and find that because this was a legislative act, then what I see Ms. Seibert conceding in her argument is that if the Court does decide that this vote was a legislative act, a writ of mandate was required on the part of Mr. Ayarzo, and that he was not able to set that aside, not do that, and proceed with an action for damages. And I, Your Honor, I don't have anything. Let me just, can I check my checklist? That's what, yes. You've got a second to check your checklist. Okay. Or as they said yesterday. I think I'm, I think I'm about done, Your Honor. Check, check your notes. Okay. Your Honor, I will submit the matter. Okay. We'll hear from you. May it please the Court. Vladimir Jacozino on behalf of Defendants Appellees. I was. Which one? Hart. Yes. I'm here to speak regarding Hart. I'm actually, we both represent all of the Defendants Appellees. I'm not. You're focusing on Hart. Correct. And I was actually going to simply address the matter of the reduction of the judgment, which seems to have been addressed to some extent. So I suppose if the Court. Do you have anything to add?  I want to add that, you know, Rule 59 itself permits the Court to amend a judgment without offering a new trial. To correct. It's quite an amendment, right? It was indeed. It was. However, it is. Wiped out all the, wiped out the verdict and awarded $1. Yes, that's correct. It did do that. And it did that because as a matter of law, the damages that were awarded were awarded in a category that couldn't exist. Why, why, why did, why, I'm trying to figure out if there's no basis to receive an award, you know, of compensatory damages, why give, why give the jury an option to even put that down in the first place? I understand that. And the best answer I can give is that it wasn't clear at the time that that was put together that there wasn't going to be that. I, I, I understand. But whose obligation was it to object to that? Wasn't it yours? It likely was. Let me ask another question. But you waived it. Who prepared the verdict for him? It was a collaborative effort, Your Honor. A collaborative on by. What, meaning the opposing counsel and the Court all worked on this on several occasions. I know, but ultimately, didn't you have an obligation to object to it? And if you didn't, you waived it. And if you waived it, what are we doing? That would be if the only avenue for relief was under Rule 50, though. Is that correct? I mean, my understanding would be that under Rule 59, which does authorize the judge to make a correction for a manifest error of law, that if that exists, they have the authority to do so. Could the jury on this record have awarded non-economic damages? Conceivably, yes. They argued pain and suffering and other things. They did. Yeah. So there was a reason to submit non-economic damages to the jury under everybody's theory, correct? I guess I would agree with that. But under your theory, there wasn't a reason to submit economic damages to the jury? I suppose that, again, it would be. And they were given the option, though. They had economic damages and then a blank and then non-economic damages and a blank. That is correct. They were given that option, yes. Nobody ever defined and instructed the jury on the difference between the two. Is that correct? That is my understanding, yes. What would our situation be today if there were just a jury verdict in an amount without allocation? In other words, if the amount just simply said, do you find for Mr. Hart, and if so, in what amount? Well, that would be an interesting question. But I think hypothetically, if we assume that and the amount still turned out to be precisely to the dollar, what Dr. Mala said was the award of economic damages, the Court may still be able to say that. There would be a good basis for a new trial motion, but not for suggesting that there's no damages at all, since you just said there were jury verdicts. Correct. I agree. Since the jury wasn't instructed as to the difference between the two, economic and non-economic, why isn't a new trial the most appropriate thing here? I'm sorry, but I cannot confirm, and I don't know as I sit here today, whether there was an instruction. Well. Non-economic or economic, and I don't want to make that concession. Okay. But you're not, because I'm asking the person at the podium. Okay. I'll adopt that statement as well, then. Okay. You don't get hybrid representation. Fair enough. Fair enough. So my question to you is, if the jury was not instructed as to the difference, and we can surely tell that. We'll look at the record. No one has to concede or not concede. But assuming that the jury wasn't instructed as to the difference between the two, don't we have exactly the kind of confusion that ought to lead to a new trial? If there was, in fact, absolutely no instruction whatsoever, then yes. And we'll figure it out. I mean, I'm not treating your answer as a concession. We'll look at the record. All right. Anything further? So your heart, you're representing heart? No. Well. Representing the defendants. Hockett. If you're talking about Hockett, yes. You were just going to focus on the new trial. Yes, Your Honor. Rule 59. Yes. The procedural part. Correct. Anything else? Not unless you have additional questions. I think we've supported it. Okay. Thank you. All right. You can have a few minutes for rebuttal. An instruction was not provided on the economic versus non-economic. Yeah. I haven't seen one, but we'll check them. Okay. Quickly, regarding the reasonable belief, both Mr. Hart and Mr. Ayarzo did testify at deposition and in discovery to the reasonableness of their belief in the fact that a law was violated, or the fact that they did believe that a law was violated, therefore raising a tribal issue of material fact, as to the reasonableness of their belief. They are cited in our brief. I can give you the excerpts of record if you'd like. Okay. Okay. Finally, on the Firefighter Bill of Rights. So the court, the district court improperly granted summary judgment on the Firefighter Bill of Rights because they stated that we did not dispose the termination of Mr. Ayarzo as a punitive action under the Firefighter Bill of Rights theory. We included as the ninth cause of action in our complaints from paragraph, second amended complaint from paragraphs 109 through 116, a Firefighter Bill of Rights cause of action. We pled government code 3250 at SEC. The fact, and we did not in there specifically state that he was terminated as a violation of the Firefighter Bill of Rights, absolutely. The termination was central to this lawsuit. The fact that the termination is punitive is a given pretty much commonsensically, at least in law. But the fact that we thought the termination and were conducting discovery based on the termination as a punitive action was something the defendant simply cannot claim they didn't have notice of the fact that we were seeking damages for the actual termination. In William Inglis and Sons Baking Company versus ITT Continental Banking Company, this issue was dealt with on... But isn't there contention that you're, in the end, you switch Firefighter Bill of Rights theories also? They're not. Actually, their contention was that based on, they asked about paragraph 114, and paragraph 114 asked to state all facts in support of this one paragraph. And the paragraph that was pled was specifically referring to the disciplinary actions and we stated all the facts regarding the disciplinary actions and the threat of disciplinary action. The termination itself was a punitive action. We did not plead the termination as a punitive action specifically under the Firefighter Bill of Rights cause of action. Therefore, they didn't ask us to state all facts in support of it. But how do we review the district judge's determination about that issue? It's in effect a sanction, is it not? It is. Don't we review that for abuse of discretion, not de novo? Except for when it's, my understanding is that when it results in the actual dismissal of a claim, without a finding of, without the district court having looked at whether or not it was harmless or justifiable, not to directly tie those two together in kind of a neat package saying... How do we review it when the district judge says, well, you never really made that claim? I can tell from your, I can tell from your responses to interrogatories, I can't tell from the complaint, but now I look at your responses to interrogatories, I don't think you ever made that claim. How do we review that? But my understanding is that when it results in the dismissal of a claim essentially as an evidentiary sanction, I have that backwards. Excuse me. Even under an abuse of discretion standard, I will, let's go that route. Under William Inglis and Sons Baking Company, this Court said that, you know, and again, this was the horizontal conspiracy versus the vertical conspiracy. And it was an entirely new theory six years into litigation. But because the facts had been discovered and the discovery had been, extensive discovery had been conducted into the facts underneath, I believe it was the horizontal discovery, the defendant couldn't claim lack of notice. So even when it is a matter of a claim being tossed out on summary judgment based on new disclosure or new facts to support the claim, the Court still has to make a finding of harmlessness or somehow the defendant was prejudiced by lack of notice. And here the defendant simply can't claim that he didn't have notice of the fact that we were seeking that the termination was central to the lawsuit, that the termination was actionable under the Firefighter Bill of Rights. And they had ample opportunity and did, in fact, conduct discovery into Mr. Hart's termination as a punitive action. Roberts. Thank you, counsel. Thank you very much, Your Honors. Thank you, counsel, for your arguments. We appreciate them. Interesting case. With that, that ends our session for today and for the week. And, Mr. Wallace, the Court for this session can adjourn. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Paez, Murguia, Hurwitz